UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

<u>For Online Publication Only</u>

-------------------------------------------------------------------X

Marbin Rodriguez,

                    Plaintiff,

            -against-

COUNTY OF NASSAU, THE POLICE
COMMISSIONER FOR NASSAU COUNTY
5TH PRECINCT, DETECTIVE DIANA KELLY,
SGT. GUBBA (#8580), POLICE OFFICER
NORDQUIST (#9445), PO LEEB (#9554),
PO MCGOWAN (#9956), PO DIGIAN
BATTISTA (#9636), PO GROGAN (#9854),
and JOHN DOE Police Officers, #1115
in their individual and official capacity each
and every one of the defendants,

                    Defendants.

-------------------------------------------------------------------X

**<u>MEMORANDUM AND ORDER</u>**
18-CV-03845 (JMA) (JMW)

**FILED
CLERK**

3:32 pm, Mar 28, 2023

**U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE**

**APPEARANCES:**

Marbin Rodriguez
        <u>Pro</u> <u>se</u> *Plaintiff*

Liora M. Ben-Sorek
Stephen E. Carlin
Nassau County Attorney's Office
1 West Street
Mineola, New York 11501
        *Attorneys for Defendants County of Nassau,*
        *the Police Commissioner for Nassau County*
        *5th Precinct, Detective Diana Kelly, Sgt. Gubba,*
        *Police Officer Nordquist, Police Officer Leeb,*
        *Police Officer McGowan, Police Officer*
        *Digian Battista, Police Officer Grogan,*
        *and John Doe Police Officers, #1115*

**AZRACK, United States District Judge:**

      Plaintiff Marbin Rodriguez ("Plaintiff"), proceeding <u>pro</u> <u>se</u>, brings this action against

Defendants the County of Nassau (the "County"), the Police Commissioner for Nassau County 5th

Precinct, Detective Diana Kelly ("Detective Kelly"), Sergeant Gubba, Police Officer Nordquist, Police Officer Leeb, Police Officer McGowan, Police Officer Digian Battista, Police Officer Grogan, and John Doe Police Officers, representing Nassau County Police Officers, (collectively the "Defendants"), in their individual and official capacities for violations of rights under the federal and state constitutions arising out of events leading to Plaintiff's arrest and subsequent conviction.

Currently pending before the Court is the Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  For the reasons discussed below, the Court grants the Defendants' motion for summary judgment.  Accordingly, Plaintiff's Complaint is dismissed in its entirety.

## I.  BACKGROUND

### A.  <u>Factual Background</u>[1]

1. <u>Plaintiff's Arrest</u>

On June 10, 2017, Plaintiff took a cab driven by Julia Caraballo ("Ms. Caraballo") from a bar in Hempstead, New York to his residence at 100 Rockmart Avenue in Elmont.  (Defendants' Rule 56.1 Statement ("Defs. 56.1") ¶¶ 1, 2.)  He retrieved money from his residence and then had Ms. Caraballo drive him back to the bar.  (Declaration of Liora M. Ben-Sorek ("Ben-Sorek Decl."), Plaintiff's Statement of Admission, June 10, 2017, ("Defs. Ex. I"), ECF No. 51-9 at 2-3.)  After remaining at the bar for about an hour and a half, Plaintiff left the bar and, coincidentally, had the same cab driver, Ms. Caraballo, drive him home for the night.  (<u>Id.</u>)  Upon arrival at the Plaintiff's residence, Plaintiff remained in the cab and told Ms. Caraballo that he wanted to talk about

---

[1] The following facts are drawn from the Complaint, the parties' Local Civil Rule 56.1 Statements, the declarations, exhibits, and testimony referenced therein, and are undisputed unless otherwise noted.  Additionally, as discussed <u>infra</u>, the Court relies on the September 25, 2018 decision of the Honorable Christopher Quinn in the related state court criminal case pursuant to the doctrine of collateral estoppel.  <u>See e.g.,</u> <u>Allen v. McCurry</u>, 449 U.S. 90 (1980).

"business" which she interpreted as Plaintiff suggesting sex.  (Defs. 56.1 ¶¶ 3, 4; Ben-Sorek Decl.,

Ms. Caraballo Deposition, June 10, 2017, ("Defs. Ex. C"), ECF No. 51-3 at 2.)  Ms. Caraballo told

Plaintiff that she was not interested and that he should leave the cab; but, according to Ms.

Caraballo, he refused.  (Defs. Ex. C)  Plaintiff then asked Ms. Caraballo for her telephone number

and in response she gave him a business card with the cab company's phone number.  (Id.)

According to Ms. Caraballo's statement,  Plaintiff  then told her that he was "a dangerous man,"

and she felt and saw a black handgun on her neck.  (Id.)  Ms. Caraballo stated that she feared for

her life as Plaintiff placed the gun on her right shoulder and rubbed it several times before he exited

the cab and placed the gun in his waistband.  (Id.)  According to Ms. Caraballo's statement, as

Plaintiff walked into his home, he told her "that people who do him wrong he makes them go

away." (Id.)  As Ms. Caraballo drove away from Plaintiff's residence, she called 911.  (Id.)

In response to Ms. Caraballo's 911 call, the police responded to the residence at 100

Rockmart Avenue at about 4:00 a.m.; they did not have a search warrant to enter the premise.

(Defs. 56.1 ¶ 11; Plaintiff's Rule 56.1 Statement ("Pl. 56.1") ¶ 1; Ben-Sorek Decl., Honorable

Christopher Quinn's Hearing Decision, September 25, 2018, ("Defs. Ex. E"), ECF No. 51-5 at 3.)

Officer Nordquist was told that a man with a gun ran into the house; he therefore entered the house

ordering the occupants to exit for their safety.  (Defs. Ex. E at 3.)  Marlon Galeano ("Mr. Galeano")

was one of the first individuals to exit the house.  (Id.)  He informed the police that he rented the

house and that no one else was in the house.  (Id.)  Mr. Galeano gave Detective Kelly verbal and

written consent to search the house. (Id.; Defs. 56.1 ¶ 14; Ben-Sorek Decl., Consent forms dated

June 10, 2017, ("Defs. Ex. D"), ECF No. 51-4.)  Escorted by Mr. Galeano, Lieutenant Gubba

searched the house.  (Defs. Ex. E at 3.)  When they reached a closed door on the second floor of

the house, Mr. Galeano informed Lieutenant Gubba that Plaintiff lived there.  (Id.)   After

3

Lieutenant Gubba knocked on Plaintiff's door, Plaintiff opened the door to his room and was immediately taken into custody by police.  (Id.)  A black handgun as well as ammunition was in plain view on the floor of Plaintiff's room from the hallway.  (Id.; Defs. 56.1 ¶¶ 12-13.)  According to Plaintiff, Officers Batista, Grogan, Nordquist, and other John Doe officers "assaulted Plaintiff."  (Plaintiff's Affidavit ("Pl. Aff.") attached to Pl. Opp'n., ECF No. 53 at 3, ¶ 5.)  Plaintiff claims that the officers "entered Plaintiff's room with guns drawn attacking him to the floor from the bed and pulling him down the stairs."  (Compl. ¶ 14.)  According to Plaintiff, he did not consent to Defendants' entrance or to the search of his room.  (Pl. 56.1 ¶ 3; Pl. Aff. at 3, ¶ 4.)  Concerned for their safety, the police continued to search the house for other persons and weapons.  (Defs. Ex. E at 3.)  Two additional males were found sleeping in the basement; they argued and struggled with police before being taken into custody.  (Id.)

Once Plaintiff was removed from the residence, he was informed that the police needed photo identification, and he told Detective Kelly that his passport was in his room.  (Defs. Ex. E at 4.)  Officer Leeb retrieved the passport from Plaintiff's room, opened it and a social security card fell out.  (Id.)  Plaintiff informed Detective Kelly that the social security card was not real— that he had purchased it on Roosevelt Avenue in Queens for about $140 because he needed it for work.  (Id. at 4-5.)

The police then conducted a show up and Ms. Caraballo positively identified Plaintiff as the customer who threatened her with a gun.  (Id.; Defs. 56.1 ¶ 17.)  Detective Kelly verbally informed Plaintiff of his Miranda rights, and had him execute a consent to search form.  (Defs. Exs. D, E, at 3; Ben Sorek Decl., Miranda card ("Defs. Ex. H"), ECF No. 51-8; Defs. 56.1 ¶ 15.)  After Plaintiff consented to speak to Detective Kelly, he was taken to the Nassau County Police Department 5th precinct where he gave an oral statement which she reduced to writing and Plaintiff

signed.  (Defs. Ex. E at 4; Defs. Ex. I.)  In his statement of admission, Plaintiff admitted to owning a gun and claimed that he sleeps with it on his bed every night for protection but never takes it out. (Defs. Ex. I at 2.)

On October 3, 2017, a grand jury indicted Plaintiff on two counts of criminal possession of a weapon in the second degree, two counts of criminal possession of a firearm, menacing in the second degree and criminal possession of a forged instrument in the second and third degree. (Ben-Sorek Decl., Indictment, October 3, 2017, ("Defs. Ex. G"), ECF No. 51-7.)

2. <u>Suppression Hearing and State Court Decision</u>

On July 26, 2018 the Honorable Christopher G. Quinn ("Judge Quinn") of the Nassau County, New York Supreme Court held a combined <u>Mapp</u>/<u>Wade</u>/<u>Huntley</u> hearing.  (Defs. 56.1 ¶ 22; Defs. Ex. E.)  The court heard testimony from witnesses for both sides.  (Defs. Ex. E at 2.)  In a Decision dated September 25, 2018, Judge Quinn denied Plaintiff's motion to suppress and found that the search of his residence was valid for two reasons.  (<u>Id.</u> 5-7.)  First, the court found that "the police entry in the home and sweep to search for the assailant and a gun was justified due to the information that they were given by [Ms. Caraballo]."  (<u>Id.</u> at 5.)  The victim's statement that "the man who menaced her entered the house with the gun . . . created exigent circumstances which permitted the police to enter the premises to protect the occupants for safety reasons."  (<u>Id.</u>) Second, the court found that "the evidence demonstrates that the police were given permission to search the premises by the primary renter of the house who told them that he had the authority to give such permission for the entire building."  (<u>Id.</u>)  Judge Quinn also held that the police officer's observation of the gun under Plaintiff's bed from outside the door of Plaintiff's bedroom along with the victim's description, permitted further investigation for the safety of the police and house occupants deeming the recovery of the ammunition and the gun permissible.  (<u>Id.</u>)

5

The court further found that the seizure of Plaintiff's passport and social security card were lawful.  (Id. at 6.)  The court reasoned that because Plaintiff volunteered his passport to the police for identification purposes while being asked investigatory questions regarding his name, Miranda warnings were not required.  (Id.)  The court held that the oral statement made by the Plaintiff about the social security card was spontaneously made and was not the subject of interrogation. (Id.)  The court also found that the show-up where the victim identified the Plaintiff was not unduly suggestive or prejudicial.  (Id.)  Finally, the court found that Plaintiff's written statement taken by the detective after she advised him of his Miranda rights was not coerced and that the Plaintiff knowingly and voluntarily waived his constitutional rights.  (Id. at 7.)

Subsequently, on July 2, 2019, Plaintiff entered a plea bargain where he was thereby convicted of criminal possession of a weapon in the second degree, menacing in the second degree and possession of a forged instrument in the second degree.  (Ben-Sorek Decl., Uniform Sentence and Commitment Form, ("Defs. Ex. N"), ECF No. 51-14.)  That conviction has not been vacated or otherwise invalidated.

**B.  Procedural History**

On July 2, 2018, Plaintiff initiated the instant action pro se while he was in jail and his criminal case was pending.[2]  (Compl., ECF No. 1.)  Defendants filed an Answer on January 2, 2019.  (ECF No. 12.)  On February 19, 2019, the Court granted Defendants' motion to stay the instant case until the underlying criminal matter concluded.  (Docket Entry Order dated February 19, 2019.)  On July 29, 2019, following the conclusion of the related criminal case, the Court lifted

---

[2] At the time Plaintiff commenced this lawsuit, he was incarcerated at Bare Hill Correctional Facility; however, Plaintiff was released from incarceration on June 5, 2020 and transferred to ICE custody at the Federal Detention Facility in Buffalo, New York.  (ECF Nos. 32, 33.)

the stay.  (Docket Entry Order dated July 29, 2019.)  On May 2, 2022, Defendants filed a fully briefed motion for summary judgment.  (ECF Nos. 50-54.)

## II. DISCUSSION

### A.  Standard for Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, interrogatories, and affidavits demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The movant bears the burden of demonstrating that "no genuine issue of material fact exists."  Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002) (citations omitted).  "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law,'" while "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Konikoff v. Prudential Ins. Co. of Am., 234 F.3d 92, 97 (2d Cir. 2000) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

When determining whether any material facts are in dispute, the court "must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant[.]" Marvel Characters, 310 F.3d at 286 (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000)).  To defeat a properly supported motion for summary judgment, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial."  Matsushita, 475 U.S. at 587 (internal quotation marks and citation omitted).  The nonmoving party, however, "must do more than simply show that there is some metaphysical doubt as to the material facts."  Id. at 586 (citations omitted).  Mere conclusory allegations, speculation, or conjecture will not avail a party

resisting summary judgment. See Shannon v. New York City Transit Auth., 332 F.3d 95, 99 (2d Cir. 2003). Unless the non-moving party produces "significant probative evidence" demonstrating that a factual dispute exists, summary judgment is appropriate. Anderson, 477 U.S. at 249.

## B. Local Rule 56.1 Statements

As an initial matter, Defendants argue that the facts set forth in their Statement of Material Facts pursuant to Local Civil Rule 56.1(c) should be deemed admitted because Plaintiff failed to submit a proper response as required by Local Rule 56.1. (Defs. Reply, ECF No. 54 at 5.) Specifically, Defendants contend that Plaintiff "failed to respond to the Defendants' statement of facts," and that "[Plaintiff's] own statements are unsupported by any citation to admissible evidence." (Id.)

Local Civil Rule 56.1 requires any motion for summary judgment to be accompanied by a statement of material facts itemized into numbered paragraphs followed by a citation to the evidence in support of those facts that would be admissible. L. CIV. R. 56.1(a) & (d). Pursuant to subsection (c), "[e]ach numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." L. CIV. R. 56.1(c). "A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible." T.Y. v. N.Y.C. Dep't of Educ., 584 F.3d 412, 418 (2d Cir. 2009). However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules" and may instead "opt to conduct an assiduous review of the record." Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001) (cleaned up).

Here, Defendants properly filed a Rule 56.1 statement along with the notice required by Local Rule 56.2 providing a pro se party specific instructions regarding how to respond.  (See ECF Nos. 50-1, 50-2.)  Although Plaintiff did submit a Local Rule 56.1 statement of material facts, his statement was not correspondingly numbered to Defendants' Local Rule 56.1 statement and contains no citations to any evidence as required by Local Rule 56.1(b) and (d).  (ECF No. 53 at 19-20.)   Accordingly, while certain of the statements in Defendants' Local Rule 56.1 statements are technically deemed admitted for the purpose of this motion, the Court has liberally construed the pro se Plaintiff's opposition papers and the evidence in the record in a light most favorable to the non-moving pro se party.[3]

## C.  Plaintiff's Claims[4]

Plaintiff claims a series of constitutional violations arising from his June 10, 2017 arrest, including a violation of his Fourth and Fourteenth Amendment rights based on what Plaintiff claims was an illegal search of his home, an unlawful seizure of his property, and his false arrest based on fabricated information that the individual Defendants conspired to create.  (Compl. ¶¶ 18-35.)   Plaintiff also alleges that Defendants used excessive force upon his arrest and failed to provide him with medical treatment.  Plaintiff seeks to hold the County liable under Monell for its

---

[3] Additionally, the Court notes that where, as here, a pro se plaintiff "verifie[s] his complaint by attesting under penalty of perjury that the statements in the complaint [are] true to the best of his knowledge," then the "verified complaint is to be treated as an affidavit for summary judgment purposes, and therefore will be considered in determining whether material issues of fact exist, provided that it meets the other requirements for an affidavit under Rule 56(e)."  Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1339, at 152 (1990) (noting that a verified pleading may serve as an affidavit only if it contains facts known to be true in the affiant's own knowledge and if it has a certain level of factual specificity)).

[4] The Court notes that in opposition to the instant motion, for the first time, Plaintiff claims, without any details, that he was injured while housed at the NCCC.  (See Pl. Aff. ¶ 23; Pl. 56.1 ¶ 14.)  However, the Court will not address this claim further as it does not appear in Plaintiff's Complaint and is wholly unrelated to the officers named as Defendants and the issues in this action.  Moreover, there is clearly insufficient evidence in the record to hold the County liable for Plaintiff's alleged injury at the NCCC under Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 694 (1978).

"unwritten policies and regulations that target immigrants without documentation to be falsely accused of crimes without probable cause or reasonable cause." (Id. ¶ 38.)

Defendants move for summary judgment arguing that Plaintiff's Section 1983 claims are precluded by the doctrines of res judicata, Rooker-Feldman, and/or Heck v. Humphrey. (Defs. Mot. at 9-14.) Additionally, Defendants contend that Plaintiff's claims against the individual Defendants and the County fail as a matter of law.

For the reasons discussed below, the Court finds that Plaintiff's claims fail as a matter of law and therefore grants summary judgment to Defendants.[5]

1.   Section 1983 Standard

Section 1983 provides a remedy for constitutional deprivations occasioned by state actors. To maintain a Section 1983 claim, the plaintiff must establish that the conduct complained of: (1) was committed by a person acting under color of state law; and (2) deprived the plaintiff of rights, privileges, or immunities secured by the United States Constitution or laws of the United States. See Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994). Further, to sustain a Section 1983 action against an individual defendant, "a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation." Grullon v. City of New Haven, 720 F.3d 133, 138 (2d Cir. 2013).

---

[5] Plaintiff attempts to raise the same claims pursuant to the state Constitution. However, where, as here, a plaintiff seeks damages for rights guaranteed under parallel provisions of the federal and state constitutions, the federal courts routinely dismiss the state constitutional claims on the ground that Section 1983 provides an alternative available remedy. See Allen v. Antal, 665 F. App'x 9, 13-14 (2d Cir. 2016) (summary order); see also Gilmore v. Bouboulis, No. 15-CV-0686, 2016 WL 4532146, at *9 (N.D.N.Y. Aug. 29, 2016) (collecting cases dismissing New York state constitutional claims based on factual allegations identical to federal claims, or where remedies were available under federal law); Lee v. Corneil, No. 13-CV-8359, 2016 WL 1322444, at *5 (S.D.N.Y. Apr. 1, 2016) ("Because Section 1983 provides remedies for [Plaintiff's] state constitutional claims of unreasonable search and seizure and violation of due process, he does not have a private right of action under the New York state constitution[, and therefore,] [t]hose claims are dismissed.") Therefore, because Plaintiff seeks relief under the federal Constitution, Plaintiff's claims based on a violation of the state Constitution fail as a matter of law.

When a plaintiff asserts a Section 1983 claim against a municipal defendant, plaintiff must also demonstrate that the constitutional deprivation "resulted from a municipal custom or policy." Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 122 (2d Cir. 1991). Municipal liability is "an extension of liability, not an independent cause of action, and therefore requires an underlying constitutional violation." Soto v. City of New York, 132 F. Supp. 3d 424, 459 (E.D.N.Y. 2015) (citing Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006)).

    a.  Heck v. Humphrey Standard

Defendants contend that Plaintiff's claim for damages is not cognizable under Section 1983 because a judgment in favor of Plaintiff would necessarily imply the invalidity of his conviction and sentence. (Defs. Mot. at 13-14.)

The Supreme Court in Heck v. Humphrey held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal courts issuance of a writ of habeas corpus, [pursuant to] 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

512 U.S. 477, 486-87 (1994) (footnote omitted); see also Muhammed v. Close, 540 U.S. 749, 751 (2004) ("In Heck . . . , we held that where success in a prisoner's § 1983 damages action would implicitly question the validity of conviction or duration of sentence, the litigant must first achieve favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence."); Wilkinson v. Dotson, 544 U.S. 74, 81 (2005) ("Heck specifies that a prisoner cannot use § 1983 to obtain damages where success would necessarily imply the unlawfulness of a (not previously invalidated) conviction or sentence."). "Thus,

pursuant to <u>Heck</u>, courts routinely dismiss claims brought under Section 1983 when such claims bear on the validity of an underlying conviction or sentence."[6] <u>McClinton v. Henderson</u>, No. 13-CV-3335, 2014 WL 2048389, at *5 (E.D.N.Y. May 19, 2014) (collecting cases).

i.  <u>Unlawful Search and Seizure Claim</u>

Here, it is clear that Plaintiff's claim of unlawful search and seizure is barred by <u>Heck</u> because success on this claim would "implicitly question the validity of [Plaintiff's] conviction." <u>Muhammed</u>, 540 U.S. at 750.  "[D]istrict courts have frequently found that § 1983 actions targeting a single episode involving a single search[ ] necessarily demonstrate the invalidity of a conviction based on that search." <u>El v. City of New York</u>, No. 14-CV-9055, 2015 WL 1873099, at *4 (S.D.N.Y. Apr. 23, 2015).  Thus, where, as here, Plaintiff's conviction was predicated largely, if not entirely, on evidence obtained during the search of his residence, "success on Plaintiff's § 1983 claim that the search [and seizure] w[ere] unlawful would necessarily imply the invalidity of his conviction." <u>Id.</u> (citing <u>Clayton v. City of Poughkeepsie</u>, No. 06–CV–4881, 2007 WL 2154196, at *4 (S.D.N.Y. June 21, 2007) (dismissing unlawful search claims as barred by <u>Heck</u> where entire criminal case turned on motion to suppress evidence from one search and plaintiff pled guilty

---

[6] The Court notes that collateral estoppel also bars Plaintiff's claims of unlawful search and seizure and false arrest against the Defendants.  "Under New York law, collateral estoppel will preclude a federal court from deciding an issue if (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." <u>McKithen v. Brown</u>, 481 F.3d 89, 105 (2d Cir. 2007) (internal quotation marks omitted).  Courts in this circuit have repeatedly barred Section 1983 plaintiffs from relitigating in federal court issues decided against them in state criminal proceedings. <u>See, e.g.</u>, <u>Mitchell v. Hartnett</u>, 262 F. Supp. 2d 153, 155 (S.D.N.Y.2003) (state court decision collaterally estopped plaintiff from relitigating the lawfulness of his arrest via Section 1983 claim); <u>Hayes v. Cty. of Sullivan</u>, 853 F. Supp. 2d 400, 426-27 (S.D.N.Y. 2012) ("Settled authority establishes that where, as here, a state court has determined that the . . . warrantless [search or] seizure was supported by probable cause, the defendant may not relitigate that determination in a federal Section 1983 action.") (citation and quotation marks omitted); <u>DeFranco v. Town of Irondequoit</u>, No. 06–CV–6442, 2009 WL 2957813, at *4 (W.D.N.Y. Sept. 11, 2009) (holding that plaintiffs who pled guilty after their motion to suppress evidence was denied were barred by collateral estoppel from re-litigating their Fourth Amendment claims under Section 1983).

  As discussed <u>infra</u>, Plaintiff had a full and fair opportunity to litigate his claims before Judge Quinn regarding any evidence that he thought should be suppressed based on a violation of his Fourth Amendment rights.  Therefore, Plaintiff is barred from relitigating the lawfulness of the search and seizure and his arrest in the instant action.

immediately after the motion to suppress was denied); see also Black v. Blackman, No. 11–CV–2372, 2011 WL 6019394, at *2 (E.D.N.Y. Dec. 1, 2011) (where conviction hinged directly on the weapons procured during search, and motion to suppress was denied, an award of damages for an unlawful search would necessarily imply the invalidity of state court conviction).

After the state court denied Plaintiff's motion to suppress the evidence seized during the search of Plaintiff's home, he pleaded guilty to the charges.  Plaintiff does not contend that his criminal conviction has been invalidated by any state or federal court.  Consequently, because success on Plaintiff's Section 1983 claim of unlawful search and seizure would necessarily imply the invalidity of his state court conviction, this claim is barred by Heck.[7]

### ii.   False Arrest Claim

Likewise, Plaintiff's constitutional claim for false arrest is also barred by Heck.  "[T]he common-law rule, equally applicable to actions asserting false arrest, false imprisonment, or malicious prosecution, was and is that the plaintiff can under no circumstances recover if he was convicted of the offense for which he was arrested" because "where law enforcement officers have made an arrest, the resulting conviction is a defense to a § 1983 action asserting that the arrest was made without probable cause."  Cameron v. Fogarty, 806 F.2d 380, 387 (2d Cir. 1986), cert. denied, 581 U.S. 1016 (1987); see also Evans v. Nassau County, 184 F. Supp. 2d 238, 243 (E.D.N.Y. 2002) (plaintiff's claim for false arrest barred under Heck because plaintiff was

---

[7] To the extent Plaintiff is seeking to hold Defendants liable for damage to his residence and personal items during the search, his Complaint does not allege sufficient facts to make out a Fourth Amendment claim.  (See Compl. ¶ 43 ("Defendants fail[ed] to report the physical damage and property damages caused by their illegal search and seizure.")  "[I]t is well recognized that 'officers executing search warrants on occasion must damage property in order to perform their duty.'" Cody v. Mello, 59 F.3d 13, 16 (2d Cir. 1995) (quoting Dalia v. United States, 441 U.S. 238, 258 (1979)).  However, "[e]xcessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment. . . ."  United States v. Ramirez, 523 U.S. 65, 71 (1998).  Because the record does not contain any facts to suggest that any of the officers engaged in excessive or unnecessary destruction of his property, he has not stated a Fourth Amendment claim.  See  Grant v. Cafferri, No. 19-CV-2148, 2019 WL 6526007, at *1 (E.D.N.Y. Dec. 4, 2019).

convicted by plea of the crime for which he was arrested, and that conviction not reversed or otherwise invalidated).

Here, Plaintiff pleaded guilty to the criminal charges which arose from his June 10, 2017 arrest.  Where "a Section 1983 plaintiff . . . pleads guilty to the underlying or lesser included charge, th[is] fact[] alone provide[s] sufficient evidence that probable cause existed at the time of the arrest and preclude[s] a false arrest claim under Section 1983."  Hayes, 853 F. Supp. 2d at 428 (alterations omitted) (emphasis in original) (plaintiff afforded full and fair opportunity to litigate issue of probable cause where state trial court held a suppression hearing at which officers were cross-examined, the trial court issued a written decision denying the motion to suppress, and plaintiff pled guilty) (quoting Feurtado v. Gillespie, No. 04-CV-3405, 2005 WL 3088327, at *4 (E.D.N.Y. Nov. 17, 2005)); see also Timmins v. Toto, 91 F. App'x. 165, 166 (2d Cir. 2004) (summary order) ("[I]n this Circuit, a plaintiff cannot establish any [false arrest] . . .  claim if he pleads guilty to a lesser offense pursuant to a plea agreement.")

Accordingly, because success on Plaintiff's claim of false arrest would necessarily imply the invalidity of his conviction resulting from that arrest and his subsequent guilty plea, Plaintiff's false arrest claim is barred as a matter of law.

### iii.  Conspiracy Claim

Plaintiff's conspiracy claim—which is based on allegations of the use of fabricated evidence to secure a search of Plaintiff's residence—is similarly barred by Heck because the existence of this alleged conspiracy would necessarily question the validity of Plaintiff's conviction.  See e.g., Amaker v. Weiner, 179 F.3d 48, 52 (2d Cir. 1999) ("Each of plaintiff's causes of action here turns on the asserted existence of a conspiracy to frame plaintiff for murder, and thus deciding in his favor on any of them plainly would call into question the validity of his

conviction.); Barnes v. City of New York, No. 13-CV-7283, 2015 WL 4076007, at *16 (S.D.N.Y. July 2, 2015) ("Where the plaintiff[']s underlying conviction has not been so invalidated, courts routinely dismiss [§] 1983 claims for, inter alia, [ ], conspiracy, [ ] pursuant to Heck.") (collecting cases).

Plaintiff claims that Defendants "fraudulently file[d] false documents and papers to authorize their conduct when they searched the persons, property and rights of all residents on June 10, 2017." (Compl. ¶ 20.)  Specifically, he claims that Detective Kelly "used fabricated information" to search Plaintiff's room and the house where he resided, and "manufactured a Nassau County Police Department document knowing the content of said document was not true." (Id. ¶¶ 29-31.)  He also alleges that Lieutenant Gubba used "false information" to falsify a police document. (Id. ¶ 33.)

However, as addressed above, Plaintiff already challenged the search of his residence in state court.  The court held a hearing and determined that the police reasonably relied upon the consent of Mr. Galeano to search the residence.  (Defs. Ex. E.)  In its written decision, the state court further found that the officers' observation of a gun and ammunition when Plaintiff opened the door to his bedroom provided sufficient cause for the police to seize the weapon.  (Id. at 5.)  Thus, because Plaintiff's conspiracy claim necessarily calls into question the validity of his conviction, Amaker, 179 F.3d at 52, the Court will not allow Plaintiff to relitigate these issues. See  Fernandez v. Holzbach, No. 3:04-CV-1664, 2007 WL 1467182, at *1 (D. Conn. May 15, 2007) (holding that plaintiff's allegations that his convictions were based on perjury and fabricated evidence pursuant to a conspiracy to violate his federal rights "necessarily impl[ied] that he was wrongly convicted" and could not be litigated "until he shows that the convictions have been

invalidated"). Accordingly, summary judgment is granted on Plaintiff's Section 1983 conspiracy claim.[8]

      b. <u>Excessive Force Claim</u>

As a threshold matter, the Court notes that while Plaintiff's guilty plea bars his unlawful search and seizure, false arrest and conspiracy claims, "a guilty plea does not necessarily preclude a claim that the police used excessive force in effectuating an arrest." <u>Coleman v. City of Niagara Falls</u>, No. 09–CV–157, 2010 WL 2869529, at *2 n. 4 (W.D.N.Y. July 20, 2010) (citing <u>Griffin v. Crippen</u>, 193 F.3d 89 (2d. Cir. 1999)).

An excessive force claim arising from an arrest is properly analyzed under the Fourth Amendment's "reasonableness" standard. <u>See Graham v. Connor</u>, 490 U.S. 386, 394-95 (1989); <u>see also Jones v. Parmley</u>, 465 F.3d 46, 61 (2d Cir. 2006) ("The Fourth Amendment protects individuals from the government's use of excessive force when detaining or arresting individuals."). The relevant inquiry is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." <u>Remy v. Beneri</u>, No. 09–CV–4444, 2011 WL 5546237, at *4 (E.D.N.Y. Nov. 9, 2011) (quoting <u>Graham</u>, 490 U.S. at 396). More specifically, "[d]etermining whether the force

---

[8] To the extent Plaintiff attempts to maintain conspiracy claims pursuant to 42 U.S.C. §§ 1985 or 1986, those claims also fail under the <u>Heck</u> doctrine. To hold otherwise would necessarily question the validity of Plaintiff's conviction and, therefore, violate the <u>Heck</u> rule. <u>Amaker</u>, 179 F.3d at 52 (holding that "<u>Heck</u> . . . applies with respect not only to plaintiff's § 1983 claim but also to his §§ 1981, 1985(3) and 1986 claims" because the existence of a conspiracy would necessarily question the validity of plaintiff's conviction); <u>see also</u> <u>McNeill v. New York</u>, 06-CV-4843, 2006 WL 3050867, at *3 (E.D.N.Y. Oct. 24, 2006), <u>aff'd</u>, 2007 WL 2781910 (2d Cir. Sept. 25, 2007) ("<u>Heck</u> applies to plaintiff's conspiracy claims under § 1985(3) as well.")

  Furthermore, any Section 1983 or 1985 conspiracy claims against these particular Defendants are also "barred by the intracorporate conspiracy doctrine, which posits that officers, agents and employees of a single corporate or municipal entity, each acting within the scope of his employment, are legally incapable of conspiring together." <u>Cruz</u>, 2009 WL 2567990, at *6 (citing <u>Herrmann v. Moore</u>, 576 F.2d 453, 459 (2d Cir. 1978) ("[T]here is no conspiracy [under Section 1985] if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own ... officers[ ] and employees, each acting within the scope of his employment.")). Here, the individual defendants are employees of a single municipal entity, the Nassau County Police Department, and the intracorporate conspiracy doctrine is therefore applicable.

used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham, 490 U.S. at 396 (citation and internal quotation marks omitted).

"Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers . . . violates the Fourth Amendment." Id. (citation omitted). "It is well established that the right to make an arrest accompanies with it the right to use some degree of physical coercion." Esmont v. City of New York, 371 F. Supp. 2d 202, 214 (E.D.N.Y. 2005) (citing Graham, 490 U.S. at 396); see, e.g., Kalfus v. New York & Presbyterian Hosp., 476 F. App'x 877, 881 (2d Cir. 2012) (affirming grant of summary judgment on excessive force claim to patrolmen who pushed trespasser onto his stomach in order to handcuff him); Sullivan v. Gagnier, 225 F.3d 161, 166 (2d Cir. 2000) ("The force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer."). "Whether the force used in connection with an arrest is reasonable depends on a careful weighing of the facts of each particular case, including whether the suspect poses a threat, resists, or attempts to evade arrest, and the severity of the crime at issue." Esmont, 371 F. Supp. 2d at 214 (citing Graham, 490 U.S. at 396).

Further, to sustain a claim for excessive force, the plaintiff must establish through admissible evidence that the alleged use of force is "objectively sufficiently serious or harmful enough" to be actionable and, consequently, that "the amount of force used was more than de minim[i]s." Rincon v. City of New York, No. 03-CV-8276, 2005 WL 646080, at *4 (S.D.N.Y. Mar. 21, 2005) (citations and quotation marks omitted). Additionally, "a plaintiff generally must prove he sustained some injury to prevail on an excessive force claim." Hicks v. Vill. of Ossining,

No. 12-CV- 6874, 2016 WL 345582, at *4 (S.D.N.Y. Jan. 27, 2016).  Allegations of de minimis

injuries are insufficient to trigger the protections afforded by the Fourth Amendment.  See e.g.,

Jackson v. City of N.Y., 939 F. Supp. 2d 219, 231 (E.D.N.Y. 2013); Williams v. City of N.Y., No.

05-CV-10230, 2007 WL 2214390, at *11 (S.D.N.Y. July 26, 2007) ("[W]here plaintiff's injuries

are de minimis, the claim of excessive force cannot rise to the level of a constitutional violation as

a matter of law.")

In the instant case, Plaintiff claims that on June 10, 2017, Defendants, "without

provocation[,] assaulted [P]laintiff while inside a[n] upstairs room[,]" "entered [his] room with

guns drawn attacking him to the floor from the bed and pulling him down the stairs." (Compl. ¶¶

24, 14.) He alleges "injures to his neck, back, both arms, ankle and head [from] Defendants kicking

him, stepping on his ankle and pulling him down the stairs." (Id. ¶ 15.)  Plaintiff claims that he

was not provided medical treatment for his injuries.  (Id. ¶ 25.)

Plaintiff's claims fail on multiple grounds.

First, neither Plaintiff's Complaint nor his opposition papers contain sufficient evidence

about the alleged "assault."  The Complaint alleges that Defendants "entered [his] room with guns

drawn attacking him to the floor from the bed and pulling him down the stairs," (Compl. ¶ 14),

and that "Battista, Nordqvist, Grogan and other John Doe Police Officers without provocation

assaulted Plaintiff while in a[n] upstairs room." (Id. ¶ 24.)  Plaintiff's affidavit in opposition to

the instant motion merely states, without any details, that "Defendants[,] [ ] without provocation[,]

assaulted Plaintiff." (Pl. Aff.  ¶ 5.)  "Reliance upon conclusory statements or mere allegations is

not sufficient to defeat summary judgment." Sammarco v. Hoolan, No. 12-CV-7857, 2014 WL

3639161, at *2 (S.D.N.Y. July 23, 2014) (quoting Woods v. Ruffino, 8 F. App'x 41, 42 (2d Cir.

2001).  Plaintiff's allegations about the "assault" and "attack[]" are too vague and conclusory for

a reasonable jury to conclude that any officer used excessive force against him.  See Jeffreys v. Rossi, 275 F. Supp. 2d 463, 475 (S.D.N.Y. 2003) (granting summary judgment on excessive force claim noting that plaintiff "must proffer some competent evidence that he was attacked by the officers."), aff'd sub nom. Jeffreys v. City of New York, 426 F.3d 549, 555 (2d Cir. 2005); Phelps v. Szubinski, 577 F. Supp. 2d 650, 663 (E.D.N.Y. 2008) (granting motion for summary judgment where arrestee's excessive force claim was "based on mere speculation [and] conclusory allegations" and there was "no demonstrable physical injury" resulting from the officer's actions).

The only evidence in the record that provides any potential detail about the alleged assault is a single sentence from Plaintiff's Complaint in which he states that he received unspecified "injures to his neck, back, both arms, ankle and head [from] Defendants kicking him, stepping on his ankle and pulling him down the stairs."  (Id. ¶ 15.)  This single sentence is insufficient for a jury to conclude that Plaintiff was subjected to excessive force.  Additionally, Plaintiff's excessive force claims also fail because the record does not identify which of the officers engaged in the conduct alleged in paragraph 15 of Plaintiff's Complaint.  As such, a reasonable jury could not find that any particular officer used excessive force on Plaintiff and, thus, personally participated in a constitutional violation.  Notably, paragraph 24 of the complaint indicates that at least five officers, including at least two John Doe officers, were in the room when Plaintiff was allegedly assaulted.  Discovery is closed and Plaintiff has failed to particularize the vague allegations against "Defendants" set out in paragraph 15 of the complaint.  Accordingly, his excessive force claims must be dismissed.[9]

---

[9] Even if the evidence was sufficient to establish that some unspecified officer or officers used excessive force against Plaintiff, Plaintiff would still not have any viable excessive force claim against any Defendant named in this case. Even if he was unable to identify which specific officer or officers used excessive force, Plaintiff could still potentially have a viable claim against Nassau County if he could meet the requirements of Monell.  However, to proceed against Nassau County, Plaintiff would have to establish, under Monell, that Nassau County has a policy, practice or custom concerning excessive force that caused the use of excessive force against Plaintiff here.  As explained infra, the record is clearly insufficient to establish that the County is liable for excessive force under Monell.

Second, the record is insufficient for a jury to conclude that Plaintiff suffered more than <u>de</u> <u>minimis</u> injuries (or any injuries at all), which dooms his excessive force claim.  The absence of any injuries stemming from Plaintiff's arrest and the alleged assault also defeats Plaintiff's claim that the officers named as Defendants here failed to provide him with necessary medical treatment.

The conclusory claims in Plaintiff's Complaint and affidavit about his unspecified injuries are insufficient for a jury to conclude that Plaintiff suffered more than <u>de</u> <u>minimis</u> injuries (or any injuries at all).  <u>See</u> <u>Davis v. Klein</u>, No. 11-CV-4868, 2013 WL 5780475, at *4 (E.D.N.Y. Oct. 25, 2013) (granting summary judgment on excessive force claim where "the record is utterly devoid of evidence of any kind supporting [plaintiff's] description of his injuries—other than his own claims); <u>Liverpool v. Cleveland</u>, No. 17-CV-1995, 2019 WL 4752072, at * 6 (E.D.N.Y. Sept. 30, 2019) (granting summary judgment on excessive force claim where there was no evidence, other than the plaintiff's own testimony, that the plaintiff sought or received treatment for injuries), <u>aff'd</u>, 848 F. App'x 468 (2d Cir. 2021).

Moreover, there is overwhelming medical evidence in the record which indicates that Plaintiff did not suffer more than <u>de</u> <u>minimis</u> injuries—or, indeed, any injuries at all—as a result of his arrest or the alleged assault.  In light of this medical evidence, Plaintiff's excessive force and failure to treat claims both fail.  The medical evidence in the record confirms that Plaintiff did not suffer any injuries to his neck, back, both arms, ankle and head as a result of his arrest or the alleged assault.  On June 10, 2017, immediately after his arrest and the alleged assault, Plaintiff twice denied that he had any injuries or that he required medical care—first at the precinct, and then at the detention facility.  (<u>See</u> Defs. Ex. L, ECF No. 51-12.)  Furthermore, upon his admission to the Nassau County Correctional Center ("NCCC"), on June 11, 2017, Plaintiff again denied that he had any current complaints or injuries.  (Defs. Ex. M, ECF No. 51-13 at 2.)  The health care

provider who conducted Plaintiff's health assessment at the NCCC noted that Plaintiff's "appearance" and "ease of movement" were "unremarkable" and that his "skin" was "free of lesions, open sores [and] serious rashes."   (Id. at 4; Pl. Opp'n. at 63-64.)  Additionally, a health questionnaire signed by Plaintiff contains a check in the "no" box affirming that he was not "currently ill or injured," and that he had not "had a head injury or loss of consciousness in the past 72 hours."  (Defs. Ex. M at 4.)  Further, the Nassau County Sheriff Department's New Admission Physical Condition Report, signed by Plaintiff and dated June 11, 2017, reflects that Plaintiff denied having any injuries.  (Id. at 5.)  Thus, the evidence in the record demonstrates that though Plaintiff was provided numerous opportunities to report any injuries he allegedly suffered during his arrest, he failed to do so, and, in fact, affirmatively denied sustaining any injuries or the need for medical attention.

Additionally, photographs taken of Plaintiff's torso shortly after his arrest and upon his admission to the NCCC do not show any type of injury to his neck, face or head as alleged.  (See Defs. Exs. J, K,  ECF Nos. 51-10, 51-11.)

Notably, the bulk of the two-hundred pages of medical records Plaintiff submitted in opposition to the instant motion relate to injuries he sustained from falling down the stairs in court on March 19, 2019—almost two years after his arrest.  (See Pl. Opp'n. at 25-229.)  For example, a progress note dated August 15, 2019, states that Plaintiff had an MRI in May 2019 due to a "f[a]ll on steps while in custody," and on April 20, 2019, Plaintiff requested "a back[]brace and a leg strap for his thigh stating that "all of what I'm dealing with is due to me falling down the stairs." (Id. at 171, 123.)

The only references in the record to any alleged injury from his June 2017 arrest appear in three NCCC progress notes dated more than one-year after his arrest.  A September 5, 2018

progress note states that Plaintiff complained of left thigh pain that "began after [an] altercation [with a] police officer 14 months ago."  (Id. at 144.)  Yet, according to an NCCC Progress note dated three weeks prior, Plaintiff reported that "upon arrest he bumped his leg on a small table in his room," and stated that the "pain had not been that bothersome until 1 week ago."  (Id. at 149.) Similarly, a January 15, 2019 laboratory report states that Plaintiff "slammed his thigh against a table" "when he was arrested."  (Id. at 194.)  A November 29, 2018 progress note references an "altercation with police officer" with regard to his thigh pain, (Id. at 165), and according to a February 9, 2019 progress note, Plaintiff reported that that his left leg "injury happened during arrest when police dropped him on the floor and he hit his leg [ ] 8 months ago.  [An] x-ray [was] taken on 8/28/18 [which] revealed no abnormality [sp.]"  (Id. at 146.)

Wholly missing from the two-hundred pages of medical records are reports of any injuries to Plaintiff's "neck," "back," "arms," "ankle" and "head," on or near June 10, 2017 as he alleges in his Complaint.[10]   (See Compl. ¶ 15.)  Where a plaintiff's allegations are "contradicted by medical documents, his word alone is not enough to create a genuine dispute of material fact." Rolkiewicz v. City of New York, 442 F. Supp. 3d 627, 643 (S.D.N.Y. 2020).  As Plaintiff did not suffer any injuries, his excessive force claims fail.  See Jenkins v. Town of Greenburgh, No. 13-CV-8845, 2016 WL 205466, at *5 (S.D.N.Y. Jan. 14, 2016) (granting summary judgment and dismissing excessive force claim where medical records made no mention of alleged injury and only evidence supporting plaintiff's claim was his own deposition testimony); Henry v. Brown, 406 F. Supp. 3d 211, 214-15 (E.D.N.Y. 2016) (granting summary judgment and dismissing excessive force claim where claims of injuries were supported by "nothing more than [plaintiff's] own bare assertions" and contradicted by medical records).

---

[10] Notably, Plaintiff's Complaint does not allege that the arresting officers injured his leg.  (See generally Compl.)

Relatedly, a reasonable juror could not find based on this record that Plaintiff suffered any injuries on June 10 that required immediate medical attention.  Accordingly, to the extent Plaintiff is claiming that the officers failed to provide him necessary medical treatment, those claims must also be dismissed.

In sum, Plaintiff has not put forth "significant probative evidence" demonstrating that a factual dispute exists to survive summary judgment on his excessive force claim.  Anderson, 477 U.S. at 249 (citation omitted).  Accordingly, summary judgment on Plaintiff's excessive force claim is granted.

### c.  Monell Liability

Finally, because the Court has already concluded that Defendants are entitled to summary judgment on all of Plaintiff's underlying Section 1983 claims concerning his arrest and subsequent conviction, the Court will also grant Defendants summary judgment on Plaintiff's Monell claims.

The Supreme Court has explained that a municipal entity may be held liable under Section 1983 where a plaintiff demonstrates that the constitutional violation complained of was caused by a municipal "policy or custom."  Monell v, 436 U.S. at 694.  As discussed supra, Plaintiff cannot prevail on any of his Section 1983 claims against the individual Defendants in this case.  Finding no underlying constitutional violation to have been committed, the Court need not address the County's liability under Monell.  See Segal, 459 F.3d at 219 ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under Monell was entirely correct."); see also Bernshtein v. City of N.Y., 496 F. App'x 140, 144 (2d Cir. 2012) ("To the extent that [plaintiff] cannot establish [defendant] violated her constitutional rights (through false arrest, malicious prosecution, or excessive detention), the City of New York likewise is not liable on the Monell claims asserting those violations." (citations omitted); Lynch v. Suffolk Cty. Police Dep't, 348 F. App'x. 672, 675 (2d Cir. 2009) (holding that,

where <u>Monell</u> claim was "derivative" of claims against individuals, and those claims were barred under <u>Heck</u>, <u>Monell</u> claim was also barred).

Even assuming, <u>arguendo,</u> that the absence of an underlying constitutional violation did not preclude a <u>Monell</u> claim against the County here, the Court concludes that the County would be entitled to summary judgment on that claim because Plaintiff offers no evidence of an unconstitutional policy, practice, or custom by the County, or a failure to supervise or train.   <u>See</u> <u>Monell</u>, 436 U.S. at 690-91 (To prevail against the County, Plaintiff must plead and prove: (1) there was an official municipal policy or custom; and (2) that policy or custom caused him to be subjected to a denial of a constitutional right.); <u>see</u> <u>also</u> <u>Jean–Laurent v. Wilkerson</u>, 461 F. App'x 18, 22–23 (2d Cir. 2012) (affirming summary judgment where plaintiff offered no relevant or admissible evidence in support of his assertion that the City of New York had established a policy or custom of "use of excessive and brutal physical force against inmates/detainees by correctional officers," and he did not establish that the deprivation of his constitutional rights was caused by any such policy).

Plaintiff asserts in conclusory fashion that the "County of Nassau ha[s] allowed their[] Police Department at the 5th Precinct to utilize unwritten polices and regulations that target immigrants without documentations to be falsely accused of crimes without probable or reasonable cause."  (Compl. ¶ 38; Pl Aff. ¶ 13.)  Yet Plaintiff fails to offer any evidence of a single policy, practice, or custom promulgated by the County that could have caused the alleged violations of Plaintiff's constitutional rights.  Such "[c]onclusory allegations of municipal custom or policy are insufficient" to survive summary judgment.  <u>Davis v. Nassau Cnty.</u>, No. 06-CV-4762, 2011 WL 5401663, at *4 (E.D.N.Y. Nov. 5, 2011) (citing <u>Ying Jing Gan v. City of New York</u>, 996 F.2d 522, 536 (2d Cir. 1993)) (the "mere assertion . . . that a municipality has such a custom or policy is

insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.") (citations omitted).  In order to survive summary judgment, the Plaintiff's case cannot rest on mere allegations of its pleading, but must set forth specific facts showing there is a genuine issue for trial.  See Anderson, 477 U.S. at 248.  Absent such a showing, Plaintiff's Monell claims cannot survive summary judgment.  See Danielak v. City of New York, 02–CV–2349, 2005 WL 2347095, at *14 (E.D.N.Y. Sept. 26, 2005) (granting summary judgment on plaintiff's Monell claim because plaintiff failed to allege a governmental custom or policy).

Accordingly, the Court grants the County Defendants summary judgment on Plaintiff's Monell claims.

### III.    CONCLUSION

For the reasons set forth above, the Court GRANTS the Defendants' motion for summary judgment and DISMISSES all of Plaintiff's claims.

Given Plaintiff's pro se status, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith and therefore in forma pauperis status is DENIED for purposes of an appeal.  Coppedge v.. United States, 369 U.S. 438, 444-45 (1962).

The Clerk of the Court is directed to send a copy of this Order to the pro se Plaintiff and mark this case closed.

**SO ORDERED.**

Dated:  March 28, 2023                                  _____/s/ (JMA)_____
Central Islip, New York                                  Joan M. Azrack
                                                                       United States District Judge

25